IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HENRY F. CROWDER, JR.,

    Plaintiff,

vs.            Case No. 17-2083-SAC

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

    Defendant.

MEMORANDUM AND ORDER

  This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I. General legal standards**

  The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On October 22, 2015, administrative law judge (ALJ) Timothy G. Stueve issued his decision (R. at 20-31). Plaintiff alleges that he has been disabled since September 16, 2013 (R. at 20). Plaintiff is insured for disability insurance benefits through

December 31, 2018 (R. at 22). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date (R. at 22). At step two, the ALJ found that plaintiff has severe impairments (R. at 22). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 23). After determining plaintiff's RFC (R. at 24-25), the ALJ found at step four that plaintiff is unable to perform past relevant work (R. at 29). At step five, the ALJ found that plaintiff could perform other work that exists in significant numbers in the national economy (R. at 30). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 30-31).

**III. Did the ALJ err in his evaluation of plaintiff's obesity?**

At step two, the ALJ found that plaintiff's severe impairments included obesity (R. at 22). This was the only specific mention of obesity in the ALJ decision. Plaintiff argues that the ALJ erred by failing to consider plaintiff's obesity in accordance with SSR 02-1p.

SSR 02-1p is a social security ruling governing the evaluation of obesity. It states that, when assessing RFC, obesity may cause limitations of various functions, including exertional, postural and social functions. Therefore, an assessment should also be made of the effect obesity has upon the claimant's ability to perform routine movement and necessary

physical activity within the work environment.  Obesity may also affect the claimant's ability to sustain a function over time.  In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity.  2002 WL 32255132 at *7.  The discussion in the SSR on obesity and RFC concludes by stating that: "As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." 2002 WL 32255132 at *8.

Although the ALJ did not specifically mention plaintiff's obesity after making his step two findings, the ALJ, when making his RFC findings, stated that he considered all of plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence (R. at 25).  Plaintiff relies on the opinions of plaintiff's treating physician, Dr. Knopp, regarding his limitations.  However, the reports from Dr. Knopp which plaintiff relies on to show that he is disabled and has severe limitations, listed numerous impairments, but made no mention of plaintiff's obesity (R. at 500-501, 872-875).  The ALJ, in making his RFC findings, gave great weight to the opinions of the state agency assessments by Dr. Coleman and Dr. Toubes-Klingler (R. at 28).  Dr. Coleman mentioned plaintiff's height (69") and weight (244 lb.) (R. at 88), or a body mass index of

36.  This reflects Level II obesity.  SSR 02-1p, 2002 WL 32255132 at *3.[1]  Dr. Toubes-Klingler listed plaintiff's BMI as 35; both indicated it was an exertional limitation upon which their limitations were based (R. at 88, 108).  Therefore, their findings expressly took into consideration plaintiff' obesity.

Plaintiff has failed to point to any evidence in the record indicating that plaintiff's obesity resulted in limitations not included in the ALJ's RFC findings.  See Arles v. Astrue, 438 Fed. Appx. 735, 740 (10th Cir. Sept. 28, 2011); Warner v. Astrue, 338 Fed. Appx. 748, 751 (10th Cir. July 16, 2009).  On the facts of this case, the court finds no error by the ALJ in his consideration of plaintiff's obesity.

**IV. Did the ALJ err in the relative weight accorded to the opinions of the medical sources regarding plaintiff's physical limitations?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who

---

[1] Level 1 obesity is 30.0-34.9; Level II obesity is 35.0-39.9; Level III, or extreme obesity is greater than 40.  SSR 02-10, 2002 WL 32255132 at *3.

7

has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around. Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations. If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources. Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating physician opinion is not given

controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion. If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

Dr. Knopp, plaintiff's treating physician, indicated on April 22, 2014 that that plaintiff was permanently and totally disabled; that he cannot hold down a part-time or full-time job because it would exacerbate all of his symptoms and make it more difficult to treat (R. at 500-501). On September 3, 2015, Dr.

9

Knopp provided a physical RFC assessment, opining that plaintiff can stand/walk for less than 2 hours in an 8 hour workday, and can sit for less than 2 hours in an 8 hour workday.  Plaintiff would also need to lie down 6 times during a work day at unpredictable times (R. at 872).  In his accompanying letter, Dr. Knopp noted plaintiff's medical problems which support his RFC findings, and indicated that pain keeps him from doing much activity day to day (R. at 875).

The ALJ gave little weight to the opinions of Dr. Knopp. The ALJ found that Dr. Knopp's own treatment notes do not document any neurologic, sensory or motor deficits reasonably consistent with his opinions, but instead consistently reflect normal physical examinations.  The ALJ also found that other medical records, including those of Dr. Peloquin, consistently reflect normal neurological functioning, along with the ability to ambulate normally, and normal strength.  The ALJ concluded that the objective findings do not support the extreme limitations asserted by Dr. Knopp (R. at 29).

The ALJ gave great weight to the opinions of Dr. Coleman (dated June 2, 2014) and Dr. Toubes-Klingler (dated November 18, 2014) (R. at 28).  The ALJ's findings limiting plaintiff to a range of light work are consistent with the opinions expressed by these two consulting physicians; to the extent that Dr. Toubes-Klingler found additional limitations, they are reflected

10

in the ALJ's RFC findings (R. at 24-25, 88-89, 108-111).  Dr. Coleman gave only a brief explanation in support of his RFC findings (R. at 89).  However, Dr. Toubes-Klingler gave a very detailed two page summary of the medical evidence in support of her RFC findings (R. at 110-111).  The ALJ stated that he gave great weight to the consulting physician opinions because they are accompanied by detailed narratives that explain what evidence they relied on in reaching their conclusions.  Furthermore, the ALJ found that evidence subsequent to their opinions does not show an appreciable worsening of plaintiff's condition.[2]  Finally, the ALJ concluded that their opinions are consistent with the evidence of record (R. at 28).

Dr. Toubes-Klingler noted in his very detailed narrative statement that plaintiff was advised by Dr. Peloquin on May 16, 2013, only four months before the date plaintiff alleged disability, that he work no more than 40 hours in his current position.  Dr. Toubes-Klingler noted that this opinion predates the time period under consideration, but gives it some weight as it is a reasonable suggestion (R. at 110).  Dr. Toubes-Klingler notes the findings that plaintiff has only minimal loss in range

---

[2] Dr. Knopp indicated on April 22, 2014, prior to the opinions from Dr. Coleman and Dr. Toubes-Klingler, that plaintiff's conditions "are all slowly getting worse over months and years" (R. at 500).  The court does not find this statement inconsistent with the ALJ's assertion that evidence subsequent to the opinions of Dr. Coleman and Dr. Toubes-Klingler does not show an "appreciable" worsening of plaintiff's condition.  Dr. Knopp did not indicate in September 2015 that there had been an appreciable worsening of plaintiff's condition since his April 22, 2014 report.  In fact, the September 2015 report opined that plaintiff had been disabled and unable to work for many years (R. at 875).

11

of motion, normal strength, and the ability to ambulate without difficulty.  She also notes only mild changes on MRI testing, and no neurological findings.  She further notes that the fibromyalgia findings are not supported with trigger points (R. at 111).

The symptoms of fibromyalgia are entirely subjective, and there are no laboratory tests to identify its presence or severity.  Wilson v. Astrue, 602 F.3d 1136, 1143 (10th Cir. 2010)(when the record contained diagnoses of chronic pain syndrome or fibromyalgia, the court stated that complaints of severe pain do not readily lend themselves to analysis by objective medical tests, and are notoriously difficult to diagnose and treat; further noting that no objective medical tests reveal the presence of fibromyalgia); Gilbert v. Astrue, 231 Fed. Appx. 778, 783-784 (10th Cir. Apr. 11, 2007)(the lack of objective test findings noted by the ALJ is not determinative of the severity of fibromyalgia); Brown v. Barnhart, 182 Fed. Appx. 771, 773 (10th Cir. May 25, 2006); Priest v. Barnhart, 302 F. Supp.2d 1205, 1213 (D. Kan. 2004); Glenn v. Apfel, 102 F. Supp.2d 1252, 1258 (D. Kan. 2000); Anderson v. Apfel, 100 F. Supp.2d 1278, 1286 (D. Kan. 2000); Ward v. Apfel, 65 F. Supp.2d 1208, 1213 (D. Kan. 1999).  Because fibromyalgia is diagnosed by ruling out other diseases through medical testing, negative test results or the absence of an objective medical test to diagnose

the condition cannot support a conclusion that a claimant does not suffer from a potentially disabling condition. Priest, 302 F. Supp.2d at 1213.

Fibromyalgia is diagnosed entirely on the basis of patients' reports and other symptoms. Brown v. Barnhart, 182 Fed. Appx. 771, 773 n.1 (10th Cir. May 25, 2006). The rule of thumb is that the patient must be positive on at least 11 of the 18 tender points to be diagnosed with fibromyalgia (R. at 425); Gilbert, 231 Fed. Appx. at 783; Brown, 182 Fed. Appx. at 773 n.1; Glenn, 102 F. Supp.2d at 1259.

Significantly, both Dr. Coleman and Dr. Toubes-Klingler noted that the diagnosis of fibromyalgia was not supported with a physical exam or with trigger point findings (R. at 89, 111). This is certainly a relevant consideration in considering the severity of plaintiff's condition. Furthermore, it is not error to consider plaintiff's other severe impairments (e.g., degenerative disc disease) through objective findings. Romero v. Colvin, 563 Fed. Appx. 618, 621 (10th Cir. May 29, 2014).

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn

v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).  The court can only review the sufficiency of the evidence.  Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo.  Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

The ALJ's findings regarding the medical evidence and plaintiff's physical impairments and limitations are supported by the very specific narrative summary of Dr. Toubes-Klingler. The court will not reweigh the evidence.  The court finds that there is sufficient evidence which a reasonable mind might accept as adequate to give greater weight to the opinions of Dr. Coleman and Dr. Toubes-Klingler.  The court concludes that substantial evidence supports the ALJ's physical RFC findings.

**V. Did the ALJ err in the relative weight accorded to the opinions of the medical sources regarding plaintiff's mental limitations?**

On June 16, 2014, Dr. Hemmendinger, a licensed psychologist, performed a mental status evaluation on the plaintiff (R. at 546-548).  Dr. Hemmendinger concluded that

14

plaintiff's medical issues prevent him from being able to consistently perform even the simplest of tasks. He further stated that plaintiff seems to have the cognitive capacity to perform tasks that require decision-making skills, but "his self-described anger issues probably would impair interacting successfully with co-workers or doing a job that required meeting the public" (R. at 548). The ALJ accorded his opinions "some" weight, noting that plaintiff demonstrated the ability to understand and carry out simple instructions on mental status examination. The ALJ further stated that Dr. Hemmendinger's opinion that plaintiff's self-described anger issues would probably impair his interacting successfully with coworkers or doing a job that required meeting the public was not supported by the other evidence. The ALJ noted that none of the treatment notes document anger issues, nor did Dr. Hemmendinger note any observations in this regard. The ALJ concluded that the evidence showed that plaintiff is capable of occasional interaction with the public (R. at 28).

The ALJ also had before him two state agency consulting mental RFC evaluations, including detailed narratives summarizing the evidence and explaining the basis for their findings, by Dr. Bergmann-Harms on June 16, 2014 (R. at 86-87, 89-91), and Dr. Maxfield on October 20, 2014 (R. at 105-106, 111-113). Both Dr. Bergmann-Harms and Dr. Maxfield considered

15

the evaluation by Dr. Hemmendinger, and both accorded it some weight (R. at 86, 106). Dr. Bergmann-Harms and Dr. Maxfield found that plaintiff has the ability to understand, remember and carry out short and simple instructions, and persist on simple tasks. They both concluded that plaintiff would work best in positions that do not require frequent contact with coworkers or the public (R. at 90-91, 112-113). The ALJ accorded great weight to their opinions because they were accompanied by detailed narratives that explain what evidence they relied upon in reaching their conclusions. The ALJ also found their opinions consistent with the evidence of record, including treatment records and the evaluation by Dr. Hemmendinger (R. at 28). The ALJ's mental RFC findings reflect the opinions of the two state agency consultants. The ALJ found that plaintiff is able to understand, remember and carry out only simple, routine, repetitive tasks, involving only simple work-related decisions, with few, if any, workplace changes. He is limited to no more than occasional interaction with the public and coworkers (R. at 25).

Plaintiff argues that both Dr. Bergmann-Harms and Dr. Maxfield found that plaintiff had moderate limitations in maintaining concentration, persistence, and pace (R. at 86, 105), and more specifically had moderate limitations in maintaining attention and concentration for extended periods (R.

16

at 90, 112), and further argues that these limitations are not adequately incorporated into the ALJ's RFC findings, which included a limitation to simple, routine, repetitive tasks and simple work-related decisions.

However, in the case of Smith v. Colvin, 821 F.3d 1264, 1269 (10th Cir. 2016), the court held that an ALJ can account for moderate mental limitations by limiting plaintiff to particular kinds of work activity, including a limitation to simple tasks. See also Lee v. Colvin, 631 Fed. Appx. 538, 540-542 (10th Cir. Nov. 12, 2015)(same; Smith opinion indicated that Lee finding was persuasive, Smith, 821 F.3d at 1269).

In the case of Nelson v. Colvin, 655 Fed. Appx. 626, 628-629 (10th Cir. July 12, 2016), Dr. Taber (in his Section I findings) found that claimant's limitations included a moderate limitation in her ability to maintain attention and concentration for extended periods, and marked limitations in her ability to understand, remember and carry out detailed instructions. Dr. Taber's Section III narrative then limited plaintiff to carrying out simple instructions. The ALJ's RFC findings included a limitation to simple instructions. The court held that Dr. Taber's Section III narrative adequately incorporated the limitations she found in Section I. The court further held that by limiting the claimant to unskilled work,

the ALJ effectively accounted for all the limitations noted in Section I of Dr. Taber's evaluation.

The ALJ's findings regarding the medical evidence and plaintiff's mental impairments and limitations are supported by the opinions and the very specific narrative summary by Dr. Bergmann-Harms and Dr. Maxfield. The court will not reweigh the evidence. The court finds that there is sufficient evidence which a reasonable mind might accept as adequate to give greater weight to the opinions of Dr. Bergmann-Harms and Dr. Maxfield. The court concludes that substantial evidence supports the ALJ's mental RFC findings.

**VI. Did the ALJ err in his analysis of plaintiff's credibility?**

Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff. Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in

evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler.  White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  Furthermore, the ALJ need not discuss every relevant factor in evaluating pain testimony. Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002).  An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why.  McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002).  It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible.  Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004).  On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court.  White, 287 F.3d at 909-910.

     The court finds no clear error by the ALJ in his credibility analysis.  The ALJ reasonably relied on the opinions of four medical sources, Dr. Coleman, Dr. Toubes-Klingler, Dr. Bergmann-Harms, and Dr. Maxfield, in making his RFC findings and in evaluating plaintiff's credibility.  All four consulting medical sources opined that plaintiff was only partially

19

credible (R. at 87, 89, 106, 111). The court will not reweigh the evidence. Although the evidence may support a contrary finding, there is sufficient evidence in the record to find that plaintiff was not fully credible. The balance of the ALJ's credibility analysis was supported by substantial evidence in the record. See Barnum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004)(while the court had some concerns about the ALJ's reliance on plaintiff's alleged failure to follow a weight loss program and her performance of certain household chores, the court concluded that the balance of the ALJ's credibility analysis was supported by substantial evidence in the record).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 13th day of April 2018, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge